NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-594

PRI OLD MILL GLEN LLC

vs.

JAMES SAWYER & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (landlord) brought this summary process action to evict the defendants (tenants) from Federally-subsidized housing due to nonpayment of rent.  The tenants answered with defenses and counterclaims.  After a jury-waived trial in the Housing Court, the judge awarded possession to the landlord and entered an order for judgment in favor of the landlord for possession and the unpaid rent.  The judge concluded the tenants failed to establish their defenses or counterclaims.  The tenants appeal, arguing that the judge erred in approving a stipulation between the parties, finding that the

_____

[1] Tyler Sawyer.

landlord had established a prima facie case for possession, failing to grant one of the tenants a reasonable accommodation, and denying the counterclaims.  We affirm.

Background.  The tenants, James Sawyer (the father) and his son Tyler Sawyer (the son), moved into the premises in 2019.  In 2022, the tenants re-executed the agreement for a subsidized tenancy.  In November 2022, the landlord served a notice to quit to "James Sawyer And all Occupants," citing nonpayment of rent for July, October, and November 2022.  The landlord commenced this eviction action in January 2023, naming only the father as the defendant and citing nonpayment of rent in September, October, November, and December 2022.  The father answered, asserting counterclaims and defenses including improper termination, breach of the implied warranty of habitability, breach of quiet enjoyment, and violation of the consumer protection law (G. L. c. 93A).

In June 2023, the landlord served on the father, the son, and another[2] a second notice to quit, citing nonpayment of rent for July 2022 and from October 2022 to June 2023.  In August 2023, the landlord filed a motion to amend the summary process

---

[2] A third tenant also lived in the premises but moved out prior to the commencement of the summary process action and thus is not a party to this appeal.

complaint to add the son as a named defendant and add the June 2023 notice to quit to the docket.  Before a hearing on the motion, mediation between the parties resulted in a stipulation in which the tenants assented to the motion to amend in exchange for an immediate trial date.

At the bench trial, the tenants presented their case pro se.  The father testified to issues in the apartment, including issues with the bathtub, an odor in the bathroom vent, and odor and hygiene issues stemming from a neighbor.  The son sat in the gallery and did not testify.

In addition to the father's testimony, the tenants submitted municipal board of health inspection reports. Following the first inspection in October 2022, the board of health cited the landlord for three sanitary code violations: (1) a lack of suction from the bathroom ventilation system, (2) a structural integrity issue in the bathroom, and (3) carpet separation causing an accident hazard.  Another inspection in January 2023 revealed that two violations had been addressed but that the bathroom ventilation system had not.  Later that month, the board of health cited the landlord for three new violations: a slow-draining bathtub, a showerhead flange separating from the wall, and a loose lock on the front door.  An inspection report from February 2023 stated that all the previous violations had

3

been corrected.  An inspection report from July 2023 stated that the tenants were concerned about an odor coming from the bathroom vent, but the inspector did not smell it.

Following a bench trial, the Housing Court judge found that the tenants owed the landlord $2,815 in damages, plus court costs, and granted possession to the landlord.  In doing so, the judge rejected the tenants' claims alleging violation of G. L. c. 239, § 8A, breach of warranty of habitability, interference with quiet enjoyment, and violation of G. L. c. 93A.  Judgment entered, and the tenants filed a notice of appeal.  The tenants subsequently obtained counsel and filed a motion to reconsider, which was denied.  The tenants then filed a second notice of appeal.

Discussion.  On review of a judgment after a bench trial, we accept the judge's findings of fact unless clearly erroneous and review the rulings of law de novo.  See South Boston Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 462 (2017).  Discretionary decisions are reviewed for an abuse of discretion, which will only be found if "the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

4

1.  Approval of the stipulation.  The tenants argue that the judge abused his discretion in approving, without a hearing or colloquy, the stipulation in which the tenants assented to the motion to amend the summary process complaint to include the son.  However, the tenants did not raise this argument below or in their motion to reconsider (where they were represented by counsel), and therefore the argument is waived.  See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 94 (2014) (arguments raised for first time on appeal considered waived).

Nevertheless, the tenants urge us to reach the merits because the responsibility of courts to ensure that indigent and disabled tenants do not unwittingly waive procedural rights is a matter of public interest and is likely to arise in the future. See New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 372 (2001) (considering waived issue of notice of termination where there was uncertainty over question, it involved matter of public interest likely to arise in future, and issue was fully briefed).  We decline to do so on this record, especially given that the tenants were represented by counsel when they moved to reconsider and still did not raise any challenge to the stipulation.  We note also that the Supreme Judicial Court has recognized that court-employed housing specialists who work as "impartial mediators" help parties, especially pro se tenants,

5

navigate the summary process procedure so that they do not unwittingly waive procedural rights. See Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 838-840, 856 n.17 (Appendix) (2019). In this case, a housing specialist reviewed the stipulation with the tenants and signed it, thereby mitigating the risk of an unknowing waiver.

2. The landlord's prima facie case for possession. The judge determined that the landlord established a prima facie case for possession. The tenants disagree, asserting that the notice to quit, served on them on June 23, 2023, was legally insufficient. Their claim is unavailing.

"[L]egally effective notice to quit is a condition precedent to a summary process action and part of the landlord's prima facie case." Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 122 (2018). A notice to quit must substantially comply with statutory and contractual requirements; that is, it cannot contain a material error or omission such that the error or omission has a "meaningful practical effect." Id. at 130-131. Where a tenant does not receive a legally effective or timely notice to quit, "the summary process complaint must be dismissed." Youghal, LLC v. Entwistle, 484 Mass. 1019, 1022 (2020).

Here, "James Sawyer And all Occupants" were served with a notice to quit on November 4, 2022.  The summary process summons and complaint was served on the father on December 29, 2022.  On June 23, 2023, the landlord served a new notice to quit on both the father and the son.  Neither tenant identified any error or omission in either notice to quit before the landlord filed a motion to amend the summary process complaint in August 2023, to add the son as a defendant and enter the June 23, 2023, notice to quit on the docket.

As noted above, prior to trial, the parties signed a stipulation, with the participation of a housing court specialist, in which the tenants assented to the landlord's motion to amend the complaint to add the son as a defendant. The tenants were free to do so.  See Dacey v. Burgess, 491 Mass. 311, 315 (2023) (parties in summary process action are free to negotiate a settlement "rather than seek a more favorable litigated judgment" [citation omitted]).  At no time before or after signing the stipulation did either tenant identify a material error or omission in the June 2023 notice to quit that had a meaningful practical effect; additionally, at the beginning of the trial, the father agreed that the landlord had established a prima facie case.  Accordingly, the judge did not err in accepting the June 2023 notice to quit and finding the

7

landlord had established the prima facie case against both tenants.

3. Failure to provide the son an accommodation to testify. The tenants argue, for the first time on appeal, that the judge abused his discretion in failing to provide the son an accommodation to allow him to testify. Once again, the tenants did not raise the issue at trial or in their motion to reconsider. Even so, the tenants argue there were four points at which the judge was made aware of the son's disability and his desire to communicate with the court: (1) when the landlord's attorney represented that the son was "very disabled," (2) when the father told the judge his son has autism, (3) when the father testified his "son can testify to" the horrible smell, and (4) when the son, who was seated in the gallery, raised his hand during a colloquy between the father and the judge.

A judge shall provide reasonable accommodations to witnesses that have alerted the court that they have a disability requiring accommodation. Adjartey, 481 Mass. at 848-849. However, at no point during the trial did anyone notify the judge that the son was requesting an accommodation. Notably, the father never called the son as a witness. The passing remarks about the son's disability and the fact that he

8

raised his hand did not constitute a request for an accommodation so that the son could testify. Indeed, even when the son raised his hand during an exchange between the judge and the father, the father did not ask the judge to permit the son to testify or even suggest that he might have relevant information. The failure to request an accommodation constitutes waiver of the issue. See id. at 846-849 (party must put judge on notice of request for reasonable accommodation to allow judge to make adequate findings to permit appellate review).

Moreover, as we have mentioned, the tenants obtained counsel after the trial, who filed a motion to reconsider. Counsel did not raise this issue in that motion. If counsel had done so, he would have placed the judge on notice of the issue and given the judge the opportunity to "make findings adequate to permit [appellate] review" (citation omitted). Adjartey, 481 Mass. at 848. Where neither the tenants nor counsel brought the issue to the judge's attention, we do not reach it here in the first instance. See Weiler, 469 Mass. at 94.

4. The tenants' counterclaims. The tenants argue that the judge erred in concluding the tenants failed to establish, by a preponderance of the evidence, their counterclaims of breach of

9

the warranty of habitability and interference with quiet use and enjoyment.  We discern no error.

a.  The breach of the warranty of habitability.  The tenants alleged that the landlord had breached the implied warranty of habitability by not repairing or addressing defective infrastructure, the presence of insects, the defective lock, and the plumbing problems.  The judge concluded that, to the extent that conditions existed in the tenants' apartment that violated the sanitary code, the violations were de minimis.  The judge then found that the tenants failed to establish, by a preponderance of the evidence, that the landlord breached the warranty of habitability.  On appeal, the tenants argue this was reversible error.

In their motion to reconsider, the tenants argued the judge should have given more weight to the father's testimony and the inspection reports.  The judge denied the motion.

In "reviewing the trial judge's decision, we accept [his] findings of fact as true unless they are clearly erroneous, and we give due regard to the judge's assessment of the witnesses' credibility" (citation omitted).  Saipe v. Sullivan & Co., Inc., 487 Mass. 1001, 1004 (2021).

The evidence at trial supported the judge's findings and legal conclusions.  The implied warranty of habitability

10

requires the landlord to maintain the premises in compliance with the State sanitary code. South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 462. "Nevertheless, the existence of a code violation by itself does not necessarily entitle a tenant to a finding that a material breach of the warranty of habitability has occurred." Id. at 463-464. A sanitary code violation "may provide compelling evidence that a dwelling is not habitable"; however, the determinative issue is "whether the premises are fit for human habitation, not . . . whether the landlord committed a code violation." Goreham v. Martins, 485 Mass. 54, 65 (2020). "[T]he warranty of habitability applies only to substantial violations or significant defects" (quotation and citation omitted). Id.

There was ample evidence that the violations of the sanitary code were not substantial or significant. Indeed, the father admitted that many of the violations had been fixed and his main concern at trial was the slow-draining tub. The reports confirmed that the violations were repaired. The judge could credit the testimony of the property manager, who described the nature of the code violations. The judge did not clearly err in deciding that, even where code violations or defects existed, they were not sufficiently "significant" or "substantial" to justify finding a breach of the warranty of

11

habitability.  See <u>McAllister</u> v. <u>Boston Hous. Auth.</u>, 429 Mass. 300, 305 (1999), and cases cited (illustrating substantial and significant violations such as apartments lacking adequate heat, hot water and fire escapes, and infested with vermin; or apartments repeatedly flooded with water and sewage).

b.  <u>Interference with quiet enjoyment</u>.  The judge found that the tenants failed to establish by a preponderance of the evidence that the landlord interfered with their quiet enjoyment of the apartment.  At trial, the father testified that his neighbor's lack of hygiene was creating an odor and attracting the presence of pests, which the landlord was doing nothing to fix.  The judge concluded that the neighbor's hygiene was not the landlord's responsibility.  The tenants argue that this was legal error.

Whether the landlord could face liability for the actions of the neighbor is a question of law we review de novo.  See <u>Moretalara</u> v. <u>Boston Hous. Auth.</u>, 99 Mass. App. Ct. 1, 7 (2020).  As the judge pointed out at trial, there is no authority for the proposition that a landlord can tell a tenant when to shower or change clothes.  Because the tenants have not explained what the landlord could have done to change the neighbor's behavior, the argument does not rise to the level needed to permit appellate review.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481

12

Mass. 1628 (2019).  See also <u>Tedeschi-Freij</u> v. <u>Percy Law Group,</u>
<u>P.C.</u>, 99 Mass. App. Ct. 772, 781 (2021) (claims not supported by
sufficient legal argument or factual argument do not rise to
level of appellate argument).[3]

<u>Judgment affirmed</u>.

<u>Order denying motion for</u>
   <u>reconsideration affirmed</u>.

By the Court (Neyman, Shin &
   Wood, JJ.[4]),

Clerk

Entered:  May 14, 2025.

---

[3] We deny the landlord's request for an award of costs.

[4] The panelists are listed in order of seniority.