Agnes, A.J.
This is a civil action in which the plaintiff, who was a guest in her relative’s apartment when she slipped and fell on the front; exterior steps, alleges that the defendants are liable to her for damages on grounds that the landlord was both negligent and breached the implied warranty of habitability. Defendants, Pelson Realty Trust and Thomas Peluso (defendants), now move for partial summary judgment as to Count III of plaintiffs complaint in which she alleges a breach of the warranty of habitability on grounds that this cause of action is not available to a non-tenant. After oral argument as well as a thorough review of both parties memorandum and supplemental memorandum, the defendants’ request for partial summary judgment is hereby DENIED.
BACKGROUND
On September 6, 1999, the plaintiff, Maria Ruiz (Ruiz), was visiting relatives who lived in an apartment at 67 Springfield Street in Lawrence, Massachusetts. The property was owned and managed by the defendants. Plaintiff did not live on the premises, nor was she listed as a tenant on any lease or contract concerning the subject property. Plaintiff alleges that she fell on the front exterior staircase of the building due to a defective condition on the premises. The staircase in question led from the sidewalk to the front doors of the building and was a common area of the premises, available for use by all tenants. See Defendant’s Memorandum in Support of Their Motion for Summary Judgment, exhibit B (photograph of the exterior stairs). Plaintiff alleges that she has suffered injuries and damages from her fall, including a broken leg. There is no dispute at this stage of the litigation over the fact that the stairs were in a defective condition.[2]
Plaintiff subsequently filed a Complaint against the defendants, alleging: (I) Negligence; (II) Strict Liability under G.L.c. 143, §51; and (III) Breach of Warranty of Habitability. On August 24, 2000, the parties stipulated that Count II, Strict Liability under G.L.c. 143, §51, be dismissed without costs. Under Count III, defendants now move for summary judgment on two grounds: (1) a claim for breach of the warranty of habitability is not available to the plaintiff as a non-tenant, and (2) a claim for breach of the warranty of habitability does not arise out of accidents occurring in common areas.
DISCUSSION
1. Standard for Summary Judgment
The court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). However, this burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
2. Viability of a non-tenant’s claim for the breach of the implied warranty of habitability.
There is no definitive appellate court decision in Massachusetts concerning whether a lawful visitor to residential premises can maintain a claim under the implied warranty of habitability. The question was left undecided in the seminal case of Boston Housing Authority v. Hemingway, 363 Mass. 184 (1973). It is an issue that has divided this court. Plaintiff finds support for her claim in the general shift and evolution of the law with regard to landlord liability. Beginning with Boston Housing Authority v. Hemingway, the Supreme Judicial Court found that social changes in landlord-tenant relations and legislative changes in landlord obligations and tenant remedies were inconsistent with medieval notions of the lease as a conveyance of property. Hemingway, 363 Mass. 184 (1973). Rather, the court recast its theory of the landlord-tenant relationship into essentially a contractual model, disposing of the caveat emptor theory of property conveyance by lease. Id. at 198.
Plaintiff also cites recent decisions reflecting “a shift in philosophy with regard to status distinctions in tort standards of care” to support her warranty of habitability claim. Young v. Garwacki, 380 Mass. 162, 167 (1980) (emphasis added); Poirier v. Plymouth, 374 Mass. 206, 221 (1978). The court has done “away with the ancient law that bars a tenant’s guest from recovering compensation from a landlord for injuries by negligent maintenance of areas rented to the tenant.” Id. at 168. Plaintiff argues that this shift and expansion of landlord liability predestines the successful employment of a breach of warranty of habitability claim by a non-tenant.
*348 There are three Superior Court decisions concerning essentially this same question with differing results. In Mitchell-Gionet v. Markowski, Civil Action No. 93-0903, 3 Mass. L. Rptr. 45 (Hampden Super.Ct. November 9, 1994) (Toomey, J.), a tenant and two guests were murdered when a perpetrator gained access to the tenant’s apartment through a door not properly maintained as prescribed by the State Sanitary Code and State Building Code. As administratrix and next friend of the guests, plaintiff claimed, inter alia, that defendant landlord had breached the warranty of habitability by failing to properly maintain the property in question. In denying defendant’s motion to dismiss, the court held that allowing non-tenants to enforce the warranty of habitability was “an extension of liability. . . clearly foreshadowed by analogous decisions of the court.” Id. at 2. The court found support for its conclusion primarily in Young v. Garwacki, 380 Mass. 162 (1980). In Young, the Supreme Judicial Court did away with the common law rule “bar[ring] a tenant’s guest from recovering compensation from a landlord for injuries caused by negligent maintenance of areas rented to the tenant.” Id. at 168. The court looked to “[r]ecent decisions of this court [which] clearly reflect[ed]... a shift in philosophy with regard to status distinctions in tort standards of care.” Id. at 167, quoting Poirier, 374 Mass at 221. See e.g., Mounsey v. Ellard, 363 Mass. 693 (1973) (eliminating the legal significance, in tort, of the distinctions between a licensee and invitee in connection with a landowner’s duty of care); and Lindsey v. Massios, 372 Mass. 79 (1977) (landlord’s duty of reasonable care to all visitors lawfully on the premises within his control extends to tenant’s guest).
The other two Superior Court decision dealing with a non-tenant action brought under the warranty of habitability reach the opposite result. In Sullivan v. H.H. Gilbert Management Corporation, 7 Mass. L. Rptr. No 13, 291 (Middlesex Super. Ct. May 16, 1997) (Borenstein, J.), the plaintiff, while a guest at premises managed by the defendant, was scalded by hot water, and subsequently brought a claim alleging, inter alia, breach of the warranty of habitability. In granting defendant’s motion to dismiss, the court found that a warranty of habitability claim was not available for non-contracting parties. The court pointed out that while the landlord had a duly to maintain the premises in a reasonably safe condition for both tenants and other visitors, “a negligence claim brought by a guest is not a claim arising from a contractual relationship.” Id. at 292. A similar result was reached in Egenlauf v. Brown, 1996 WL 1186833, 5 Mass. L. Rptr. 59 (Mass. Super. January 5, 1996) (Sosman, J.), a slip and fall case in which the plaintiffs argued that the warranty of habitability extends to guests on the premises as well as to tenants. In rejecting this claim, the court acknowledged the landlords’ duty to all visitors to maintain the premises in a reasonably safe condition, but noted that ”[t]ransforming that duty into a ‘warranty’ in the absence of any underlying contract into which the warranty could be implied would be an inappropriate blurring of contract principles and tort principles.” Sullivan, 7 Mass. L. Rptr. No 13, at 292.
The results reached by this Court in the Sullivan and Egenlauf cases to bar guests or visitors from asserting a cause of action for breach of the implied warranty of habitability are rooted in the observation in Hemingway that the warranty arises out of the contractual relationship between the tenant and the landlord. “Alease is essentially a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises.” Hemingway, 363 Mass. at 198. As the Supreme Judicial Court observed in Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368 (1997), “failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made.” Accord, Vaughan v. Eastern Edison Co., 48 Mass.App.Ct. 225 (1999) (pedestrian injured when struck by an automobile while crossing a street on a college campus that was not lit due to the utility company’s failure to abide by the terms of its contract with the college could not maintain an action against the utility company). See also Redgrave v. Boston Symphony Orchestra, 557 F.Sup. 230, 238 (D.Mass. 1983) (“[A] breach of contract is not, standing alone, a tort as well”). However, there is a settled exception to the rule that supplies the doctrinal underpinning for the result in Mitchell-Gionet and in this case. Section 324A of the Restatement (Second) of Torts, which concerns the liability to third parties for the negligent performance of certain contractual obligations, provides, in part, as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person ... is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or . . .
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
In Hemingway, the Supreme Judicial Court stated that the fundamental purpose of the doctrine of the implied warranty of habitability is to guarantee that in a rental for dwelling purposes “the premises are fit for human occupation.” Hemingway, 363 Mass. at 199. See G.L.c. 111, §127A. The danger of injury or death resulting from substandard conditions in premises rented for dwelling purposes that render it unfit for human habitation is no less for a tenant who is on the premises than it is for a guest. It is certainly well understood by landlords and other property owners who rent premises for dwelling purposes that tenants *349 will have guests and visitors in their apartments or units. In view of the fact that a declared purpose of the Massachusetts State Sanitary Code is “to protect the health, safety, and well-being of the occupants and of the general public,” 105 C.M.R. 410.001 (emphasis added), it is reasonable for such guests and visitors to assume that the rental premises that they visit will be fit for human habitation.[3] For these reasons, Section 342A of the Restatement (Second) of Torts provides grounds for a non-tenant guest to bring a civil action for damages against the tenant’s landlord for violation of the implied warranty of habitability. For cases applying Section 342A for the benefit of plaintiffs who were not parties to the contract see Parent v. Stone & Webster Engr. Corp., 408 Mass. 108 (1990); Banaghan v. Drewey, 340 Mass. 73 (1959); Power Serv. Supply Inc. v. E.W. Wiggins Airways, Inc., 9 Mass.App.Ct. 122 (1980).[4]
"The implied warranty of habitability ‘is concerned with the provision, maintenance, and repair of the physical facilities vital to the use of the leased premises.’ Not every breach of the State sanitary code supports a claim under the implied warranty of habitability.” McAllister v. Boston Housing Authority, 429 Mass. 300, 305 (1999) (quotations omitted). However, as to those requirements that make up fitness for habitation, the doctrine of warranty affords a tenant compensation not only for economic loss, as in Berman and Hemingway, but for personal injury. Young v. Garwacki, supra, 380 Mass. at 168, citing Crowell v. McCaffrey, 377 Mass. 443 (1979). See also Doe v. New Bedford Housing Authority, 417 Mass. 273, 282 n.10 (2000). And, in such a case, the landlord is strictly liable. “Considerations of fault do not belong in an analysis of warranty.” Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 200 (1979). Thus, when a tenant suffers personal injury as a result of a landlord’s breach of the implied warranty of habitability, the landlord’s contractual obligation to the tenant requires the payment of compensatory damages, to the tenant under a strict liability standard. It makes no sense to suggest that if the same violation of the implied warranty of habitability takes place and causes injury to a guest who happens to be seated next to the tenant or who is standing behind the tenant, that the landlord should be liable, if at all, under a negligence standard. Compare J.C. Melick, “The Standard of Care In Warranty of Habitability Cases,” 82 Mass. L.Rev. 187, 194 (1997) (noting the anomaly [“Creating a strict liability standard for tenants in warranty of habitability cases, while maintaining a reasonable care standard for guests and other lawful visitors, would create a return to the archaic system of devising different classes of plaintiffs”) but suggesting, instead, that the solution is to eliminate strict liability entirely, and to limit both tenants and guests to a remedy for negligence).
The promise of the implied warranty of habitability, which derives from a legislatively expressed public policy, see G.L.c. 111, §127A, made applicable by the Supreme Judicial Court in Hemingway to “physical facilities' vital to the use of the leased premises,” McAllister, supra, at 305, will go unfulfilled if we move from a regimen of strict liability to a system based on negligence.[5] Thus, a cause of action brought by a tenant’s guest or visitor for an injury that results from a breach of the implied warranty of habitability should stand on the same footing as the tenant’s claim under similar circumstances, and should be governed by principles of strict liability.[6]
3. Whether the implied warranty of habitability extends to defects in an exterior staircase.
The defendants advance the further argument that even if the implied warranty of habitability is available to non-tenant guests, it does not apply to defects in common areas such as an exterior staircase. In Hemingway, the Supreme Judicial Court noted that “[u]nder this warranty of habitability, the landlord warrants ‘that at the inception of the rental there are no latent [or patent] defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable.” Id., 363 Mass. at 199, quoting Kline v. Burns, 111 N.H. 87, 92 (1971). An exterior staircase is a physical facility that it vital to the use of the leased premises. See McAllister v. Boston Housing Authority, 429 Mass. 300, 305 (1999). Under 105 C.M.R. §410.500, it is the responsibility of the owner to maintain “staircases . . . in good repair and in every way fit for intended use.” In McAllister, the tenant was injured due to a fall on a natural accumulation of ice and snow. In upholding a directed verdict for the landlord, the Court appears to have taken the position that such a fall did not result from a defect that violated the implied warranty, and not that defects in common areas are not included in the implied warranty. See also Doe v. New Bedford Housing Authority, 417 Mass. 273, 282 (1994) (inadequate security is not a “physical defect” in the premises). Thus, a significant defect that makes the exterior staircase unusable or dangerous is a defect that is within the scope of the implied warranty of habitability.
The defendants rely on Maddox v. Ponzo, Middlesex Superior Court No. MICV94-07503 (November 11, 1995) (Welch, J.), where it appears that the Court, in a brief order, held that a tenant who fell on an exterior staircase was not permitted to recover under a claim of breach of the implied warranty of habitability. See also “Tenant Can’t Recover Over Defective Common Area,” 7 Mass. L. Rptr. 565. In Maddox, the court did not have the benefit of the analysis of this issue in McAllister. In any case, insofar as the court reached a different result in Maddox, I decline to follow it in this case.
In the present case, it is not possible to say whether the defect in the exterior staircase was a minor or major defect, and whether it rendered the stairs unfit for their intended purpose. It would not be appropriate *350 to resolve this factual question on the record before the court.
CONCLUSION
For the above reasons, the defendants’ motion for partial summary judgment is DENIED.

 The defendants accept, for purposes of their motion for summary judgment, the plaintiffs description of the condition of the stairs. In her complaint, the plaintiff states that her “fall was caused by a defective condition then and there existing on the premises which condition the defendants, their agents, servants or employees, knew or should have known existed." Plaintiffs Complaint, paragraph 7. In the Civil Action Cover sheet filed by the plaintiff in this case, she adds that when she fell, the steps were “worn and treacherous and the entire porch area was unlit." The defendants offer nothing to rebut this factual claim in their submission.

 Contrast Lewis v. Ariens Co., 49 Mass.App.Ct. 301, 307 (2000), discussing Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 19-23 (1998) (declining to impose strict liability in a products liability case for an injury resulting from a failure to warn on grounds that a second-hand purchaser is too remote from the sale).

 This is sometimes referred to as the “Craig principle of foreseeable reliance.” Page v. Frazier, 388 Mass. 55, 65 (1983), discussing Craig v. Everett M. Brooks Co., 351 Mass. 497 (1967). This theoiy holds that “a defendant under a contractual obligation ‘is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of the negligent failure to carry out that obligation.” Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 114 (1990) (citations omitted).

 This result is more in keeping with the traditional view in this Commonwealth “that a landlord owes to the guests of his tenants the same duty which he owes to his tenants . . .” Lindsey v. Massios, 372 Mass. 79, 81 (1977).

 The liability of a property owner to a non-tenant guest for breach of the implied warranty of habitability does not make the owner an insurer of the property, and does not alter the common law duty of a landowner to maintain properly in a reasonably safe condition in view of all of the circumstances. See, e.g., Luoni v. Berube, 431 Mass. 729, 731 (2000). This implied warranty is limited to “physical defects” that are vital to the dwelling’s fitness for human habitation.